UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BELMONT COMMONS, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-6879** |
| **AXIS SURPLUS INSURANCE COMPANY et al.** | **SECTION "T"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Brower Insurance Agency's Motion for Summary Judgment. [Rec. Doc. No. 26]. The Court, having considered the parties' briefs, the Court record, the law and applicable jurisprudence is fully advised in the premises and is ready to rule on the motion.

**I.   BACKGROUND**

Belmont Commons, L.L.C. ("Belmont") has a long-term lease of the fourteen story building located at 925 Common Street in New Orleans. The building is roughly 300,000 square feet but 110,000 of that is under lease to the Fairmont Hotel, the adjoining building owner.

Axis Surplus Insurance Company ("Axis") insured Belmont and 925 Common Street under an insurance policy from March 1, 2004 to March 1, 2005. Brower Insurance Agency ("Brower") and CRC Insurance Services ("CRC") were the brokers or agents for Belmont.

In late 2004, Belmont was negotiating with Pullman Bank to obtain the funds necessary to renovate the 190,000 square feet of space that had not been leased to the Fairmont. However, Pullman required a change in insurance coverage as a precursor to providing this financing. From October to December 2004, there was a series of emails concerning the coverage exchanged between representatives of Belmont, Pullman, and Russ Miller of Brower. [Rec. Doc. No. 36, Ex. 2]. The coverage amount requested by Pullman Bank and sought by Belmont was the replacement cost of the entire building, $29 million. Brower allegedly advised Belmont that Axis could issue an endorsement to continue coverage on the existing structures and provide these requested insurances.

The coverage that was eventually placed was through a builder's risk policy with a rehab endorsement. [Rec. Doc. No. 36, Ex. 9]. This policy was acquired through Axis and was effective from May 1, 2005 until May 1, 2006. On February 7, 2005, Belmont then signed a renovation project with Carl E. Woodward, L.L.C with a guaranteed maximum price of $11,351,594.00.

Hurricane Katrina caused an estimated $7,852,670.58 worth of wind-related damage to the property. Belmont filed a claim with Axis shortly after the storm. Axis responded to the claim with a reservation of rights based upon policy exclusions because of the rehabilitation endorsement. Belmont was unsuccessful in negotiations with Axis in the hopes of satisfying its claim.

Belmont contends that the Axis policy covers the damages to the building without regard to any exclusion or alleged ambiguity. However, Axis has raised issues about the scope of the coverage placed by Brower and has refused to pay for Belmont's losses. Consequently, Brower

has been joined as a defendant to the extent that there is a gap or lapse in coverage due to the language of the builder's risk portion of the policy.  A claim has also been asserted against Brower for failure to advise of flood coverage in excess of what was issued on the building.

The plaintiff's petition alleges that Brower negligently misrepresented that the plaintiff's policy provided coverage for hurricane wind-related damages and failed to properly advise or recommend additional insurance coverage which led to the plaintiff being underinsured.  Brower has filed the instant motion for summary judgment to dismiss the plaintiff's claims against it alleging that the plaintiff has failed to state a cause of action against Brower and, even if it has stated a claim, the claim is perempted under the one-year peremptive period set out in La. R.S. §9:5606(A).

## II.     LAW ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. A fact is material if it "might affect the outcome of the suit under governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

### III.   INSURANCE AGENT LIABILITY

Belmont's Complaint argues that in the event that some or all of its damages are not covered by the Axis policy, Belmont is entitled to recover such losses it sustained that it believed it had covered through the policy because of Brower's representations as such.  Rec. Doc. No. 1-2, p. 13.  The complaint does not go into detail about what representations were made, when and by whom.  Brower argues that it owed no duty to the plaintiff which would give rise to an actionable claim, because an agent's duty is limited.

Under Louisiana law, an insurance agent has a fiduciary duty to the insured and he is liable for his intentional or negligent breach of this duty. Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co., 910 F.2d 224, 229 (5th Cir.1990). In order to prevail on this cause of action, the Plaintiff must show that (1) an undertaking or agreement by the agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3)

actions by the agent warranting the client's assumption that he is properly insured. Id. (citing Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730-31 (La.1973). An insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client. Id. (citing Graves v. State Farm Mut. Auto Ins. Co., 821 So.2d 769, 773 (La. Ct. App.6/26/02)).

However, an agent has no duty to independently advise the client about the cost, availability, or desirability of certain insurance coverages or additional limits of insurance, unless the agent agrees to such a duty. See Graves v. State Farm Mut. Auto. Ins. Co., 821 So.2d 769, 773-774 (La. App. 3d Cir. 2002) ("[T]here is no evidence that any of the defendants held themselves out as an advisor to the Graves or that there existed a special relationship or agreement to render insurance advise."); Smith v. Millers Mut. Ins. Co., 419 So.2d 59, 65-66 (La. App. 1982) (rejecting plaintiff's argument that agent had duty to "review his client's coverage and recommend the forms of insurance best suited to the client's needs, including adequate monetary limits").

In this case, it is clear that the parties were negotiating over a sophisticated and complex insurance policy. The plaintiff used Brower's services as an "insurance consultant" and relied on representations by Mr. Russ Miller of Brower to help it determine the proper insurance coverage. Therefore, there is, at the very least, an issue of fact as to the services that Mr. Miller held himself out as performing as an advisor or consultant and an issue of fact as to the nature of the specific relationship and agreements between the agent and the plaintiff and its representatives. Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, *4 (E.D. La. 2006)( citing

Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d. 728, 730-31 (La.1973)).

IV.     PEREMPTION

Defendant Brower argues that even if it owed the plaintiff a duty, and then breached such duty, no claim may be maintained because it has been perempted by law. La. R.S. 9:5606 provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and property venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission or neglect.

La. R.S. 9:5606. The statute specifically provides that the period is peremptive by nature and cannot be interrupted, renounced or suspended. Id.

In Campo v. Correa, 828 So.2d 502, 510-511 (La. 2002), the Louisiana Supreme Court said:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. <u>Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry.</u> Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.

Id. (citations omitted)(emphasis added).

Defendant Brower argues that under the one year provision of the statute, the plaintiff's claims have been perempted and any right of action against it has been extinguished. It is certainly true that under Louisiana law, an insured has a duty to read his insurance policy and know its provisions. Campo, 828 So.2d at 510-511; see also Motors Ins. Co. v. Bud's Boat Rental, 917 F.2d 199, 205 (5th Cir.1990); Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *3 (E.D.La. 2006); Stephens v. Audubon Ins. Co., 665 So.2d 683, 658 (La. App. 2 Cir. 1995). Defendant relies on Dobson v. Allstate Ins. Co., 2006 WL 2078423 at *10 (E.D. La. July 21, 2006), wherein Judge Vance held that if the act or omission was in placing the insufficient coverage, then the peremptive period would run from the purchase of the policy, and would be unaffected by the subsequent renewals. 2006 WL 2078423 at *10.

In this case, plaintiff originally secured a commercial insurance policy through Brower from Axis Surplus on May 1, 2004. Brower argues that the policy was renewed for the period of May 1, 2005, whereas Belmont argues that the 2005 policy was not a mere renewal but a distinctly different policy reflecting the need or availability for additional coverage for the structure during the renovation. In Fidelity Homestead Ass'n v. Hanover Ins. Co., 458 F. Supp.2d 276, (E.D. La. 2006), Judge Berrigan ruled that while renewals of insurance policies usually do not operate to restart peremption, renewals can be the basis of separate torts, if the complained of conduct constitutes "separate and distinct acts." Id. at 280. In accordance with this line of reasoning, the Court concludes that the 2005 policy was not a mere renewal without any further discussions or representations, and that the 2005 policy and the communications leading thereto served to re-start peremption. The plaintiff's opposition to this motion provides

various exhibits which indicate that there was extensive contact between Russ Miller of Brower and representatives of the plaintiffs after the issuance of the 2004 policy that led to the culmination of the 2005 policy.  In fact, several of such communications occurred in November 2004.[1]  As such, the Court finds sufficient allegations of acts that constitute "separate and distinct acts" for the purposes of restarting prescription.  These separate and distinct acts occurred within three years of the time at which the plaintiffs filed suit and the plaintiff filed suit within one year of when the plaintiff became aware of any gap in its coverage.  The manager of Belmont, Emanuel Organek, stated in his affidavit that Brower and/or Mr. Miller never relayed to him that there may be gaps in coverage from the builder's risk endorsement, and that only after Hurricane Katrina hit did he learn that there may be gaps or exclusions or that excess flood insurance was available.  Rec. Doc. No. 36-2, p. 3.

    Understanding that this policy involved complex and intricate insurance coverage, the Court finds it reasonable that the plaintiffs would be unaware of any gaps in coverage until such gaps were brought to its attention by the Adjuster for Axis only after the hurricane damage was incurred.  As such, the Court finds that there has been an insufficient showing that the plaintiff had actual or constructive knowledge sufficient to excite attention and put the plaintiff on notice of its claim until after the storm.  Therefore, as the plaintiff filed suit within a year of the storm, and had only gained knowledge of its potential action sometime after the storm, and filed within three years of acts or omissions on the part of Brower, occurring by communication as late as November 2004 and in the policy as late as 2005, the plaintiff's claims against its agent, Brower have not been perempted.

---

[1] See, e.g. Rec. Doc. No. 36-6, p. 1 (E-mail from Russ Miller to Dan Pancamo).

Accordingly,

**IT IS ORDERED** that the Defendant Brower's Motion for Summary Judgment be **DENIED**.

New Orleans, Louisiana, this 19th day of September, 2007.

_____
**UNITED STATES DISTRICT JUDGE**
**G. THOMAS PORTEOUS, JR.**