## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BELMONT COMMONS, L.L.C.**                              CIVIL ACTION

**VERSUS**                                                NO. 06-6879

**AXIS SURPLUS INSURANCE COMPANY, ET AL.**               SECTION B(5)

### ORDER AND REASONS

Before the Court is Axis Surplus Insurance Company's Motion for Summary Judgment requesting a finding that its policy does not provide coverage for the loss of rental income Plaintiff sustained after Hurricane Katrina. Rec. Doc. 102. The Motion is Opposed. Rec. Docs. 158, 163. For the following reasons, the Motion is **denied.**

**I.   BACKGROUND**

In 1998, Plaintiff, Belmont Commons, LLC ("Belmont"), purchased the long term lease of the property located at 925 Common Street. The property consisted of a building of approximately 294,300 square feet. Belmont Commons leased approximately 104,583 square feet of the building to the New Orleans Roosevelt Venture ("NORV"). NORV utilized this space as part of its operation of the Fairmont Hotel.

Brower Insurance Agency ("Brower") was the agent for Belmont from the time it acquired the 925 Common property and it is alleged that Belmont and Brower had a long-standing relationship.

On January 30, 2004, Brower, submitted an application to CRC Insurance Services, Inc., seeking insurance for the period March 1,

2004 to March 1, 2005. Belmont alleges Brower requested commercial property insurance in the amount of $18,936,945 and loss of rental income insurance in the amount of $456,000.

Axis Insurance Company ("Axis") issued Belmont policy number EAF 701529, for the period March 1, 2004 to March 1, 2005 with building coverage in the amount of $18,936,945 and business income or loss rental income coverage in the amount of $456,000.

In 2004, Belmont Commons decided to renovate the portion of the 925 Common property that was not subleased to the Fairmont/NORV, into apartments. Belmont provides that it had no intention to alter the space it subleased to NORV.

Belmont communicated this information to Brower. Belmont asserts that Axis insisted that Belmont purchase a Hotel and Office Builder's Risk policy for the policy period March 1, 2005 to March 1, 2006 due to the renovation construction.

Attached to Belmont's opposition is a February 25, 2005, e-mail to CRC from Axis'. That e-mail provides:

> We will have to convert this to a Builders Risk policy with an endorsement to provide coverage for the existing building. The BI [business income] will be covered under soft cost. The premium for the existing building and BI is $101,435 and agreed amount is provided for the building with limits of $29M and there is a sublimit for the BI of $436,000.
>
> The builders risk coverage will be picked up by us with a sublimit of $12,700,000 with the same deductibles as provided for Real Property for a of $44,450 (same as that Zurich used).

> The total annual premium $145,885... Attached are the policy forms we will use at renewal due toe the change in coverage requested.

*See* February 25, 2005 e-mail attached as Exhibit "H" to Rec. Doc. 158.

The quote was issued the same day and reflects the following: Property Limits: $29,000,000; Sublimts: $436, 000 Soft Cost; $12,700,000 Builder's Risk.  The premium quoted was $124,700.  *See* Exhibit "J" attached to Rec. Doc. 158

Coverage was bound on March 2, 2005 and the binder provides that the property at 925 Common Street, New Orleans, La. has $29,000,000 of insurance coverage "Building any one occurrence"; "$436,000 Soft Costs" and "$12,700,000 Builder's Risk Project." *See* Exhibit "K" attached to Rec. Doc. 158.

On June 1, 2005, Brower delivered the Axis policy for the March 1, 2005 – March 1, 2006 policy year.

On August 29, 2005, Hurricane Katrina made landfall and the storm caused significant damage to the Fairmont Hotel. NORV closed the Fairmont and NORV did not pay Belmont Common any further rent under the 1952 Sublease after August 29, 2005. By letter from its counsel, dated November 8, 2005, NORV contacted Belmont Commons to report that NORV had suspended its payments of rent under the sublease because the space was "unfit for occupancy."  On August 22, 2007, NORV announced that was terminating the 1952 Sublease. *See* Exhibit "M" attached to Rec. Doc. 158.  The reasons given for

3

termination are failure of Belmont to fulfill its obligations under the lease including, not making repairs, not intending to make repairs and charging NORV for casualty insurance which Belmont failed to maintain.

Belmont asserts that its claim of loss of rental income under the 2005-2006 Policy reached $456,000 before NORV terminated the 1952 Sublease in August 2007.

In 2006, Belmont notified Axis via Proof of Loss of claims under the 2005-2006 Policy, including the loss of rental income from NORV. On March 29, 2006, GAB Robins North America, Inc. ("GAB"), Axis' adjusting company, notified Belmont's independent adjusters that it, *inter alia*, would not be able to attend an inspection "at the Fairmont Hotel leased premises" and that Axis "is conducting this investigation under a full Reservation of Rights."

In April, 2006, Russ Miller at Brower sent an email to CRC stating:

> Tony, the policy that we had for the period of 3/1/04-05 had rents coverage of $456,000. This policy was written through Axis. For the policy period of 3/1/05-06 we had requested again rents coverage of $456,000. Enclosed is the email from the insured confirming the tenant is still occupying the building and we still need the rental coverage. Enclosed also is the application we sent to you on 2/21/05 per the email below and the application attached. This application also requested the same rental coverage of $456,000. Our application made no mention or request for income as a result of delay of construction.

4

> Please speak with the underwriter and confirm coverage was intended for this exposure and relay this information to the claim department. Sincerely, Russell J. Miller.

*See* Exhibit "O" attached to Rec. Doc. 158.

Mr. Volpi the same day forwarded Mr. Miller's email to Donna Dixon at Axis, providing:

> Below is e-mail received from agent today including his attachments. Need you to review the file on this account including the prior policy. The prior policy included business income/loss of rents for a portion of the building that was leased to an adjacent hotel. The renewal application also requested this coverage however when renewing coverage was converted to a builders risk form as a majority of the building was under renovation. The coverage form used on the renewal policy "extra expense and rental income extension endorsement" indicates the rental income limit that was provided the year before renovation started however this form only seems to apply to loss of rents due to delay in occupancy. From what I gather the insured is in dispute with the hotel who may be refusing to pay rent and this coverage may become an issue. Could not tell from conversation with agent if there was any actual damage to the portion of the building that the hotel leased from the insured.

*See* Exhibit "O" attached to Rec. Doc. 158

Belmont submits that it, CRC and Axis intended the 2005-2006 Policy to provide the same coverage as the 2004-2005 Policy plus the addition of Builders Risk coverage. However, they allege that Axis denies that it provided Belmont with any insurance coverage for the space Belmont subleased to NORV or for Belmont's loss of

5

rental income. Mr. Miller, the agent at Brower, testified that "the entire building was covered, the same way it was with Axis building [sic] – the Axis Policy from 02/01/05 to 02/01/06." *See* Miller Deposition attached as Exhibit "P" to Rec. Doc. 158.

Axis has not paid anything with respect to the damages to the space that NORV subleased from Belmont Commons or for Belmont Commons' claim for loss of NORV's rental income claiming it is not covered by the Axis 2005-2006 policy.

On August 28, 2006, Belmont filed its petition against Axis and other defendants in the Civil District Court, Parish of Orleans. After removing the case to this Court, Belmont filed an amended complaint alleging that "Endorsement B to the policy provided an additional coverage for $456,000 to insure against loss of business rental income." Belmont alleges that as a result of the Hurricane Katrina damage, the Fairmont ceased paying rent and that the total lost rental income exceeds the amount of coverage provided by the policy. Thus, Belmont seeks the policy limits for the loss of rental income.

Against this backdrop, Axis filed the instant Motion claiming that the policy it bound and issued does not provide the coverage requested for Belmont's "business interruption" claim and, therefore, that claim should be dismissed. Axis argues that the plain reading of the policy shows it does not provide coverage for the loss rental income. Endorsement B provides that Axis will pay

damages in the form of loss rental income which is due "to delay in the completion of the renovation project at the property." Because the renovation took place in the section of the building that was not leased to the Fairmont/NORV and because no delay in the renovation project due to the storm caused Fairmont/NORV to suspend its payment, Axis argues there is simply no coverage under the policy.

In addition, Axis argues that Endorsement B contains an exclusion from coverage for loss of income resulting from the "suspension, lapse, or cancellation of any lease." The complaint alleges that Belmont suffered loss of rental income because Fairmont/NORV suspended payments under the sublease; thus, Axis argues those damages are specifically excluded by its policy.

Axis acknowledges that there was 47 day delay in the renovation project due to Hurricane Katrina; however, it submits that Belmont has asserted no evidence indicating that its "business interruption" claim for loss rents is related to this delay. Axis also submits that aside from Endorsement B, there is no other provision in the policy providing the coverage Belmont seeks.

Alternatively, and in the event coverage is found under the policy, Axis argues that Belmont cannot meet its burden in proving it sustained a business income loss at trial because the reports issued by Belmont's experts do not explain how the loss of rental income is related to the renovated area of the property and,

therefore, covered. Second, Axis asserts that the Fairmont/NORV ended its lease agreement with the Belmont because the damages to the building (affecting over 50% of the leased space) were not repaired in a timely fashion making the space inhabitable. Axis contributes this damage to flooding, a non-covered peril under the policy. Hence, they urge that because any claim for "business interruption" arises out of a loss that is not covered, i.e. flood, Belmont cannot recover these losses. Third, Axis argues that the CDC suit between Belmont and NORV was settled for approximately $500,000 and that settlement was intended to cover losses sustained by Belmont in satisfaction of Belmont's claims against NORV. Because Belmont cannot show it suffered any loss that was not previously recouped from NORV, Axis argues the claims for loss rents should be dismissed as the purpose of insurance is for indemnification, not profit.

    Belmont counters that Endorsement B was not intended to apply to coverage for the existing building, that is, the NORV space that was not being renovated. Belmont asserts that the NORV space was not undergoing construction and no delays in construction could have had any impact on their rental obligations and thus, they did not need "builders risk" insurance. Belmont argues that the "rehab endorsement" was supposed to restore the coverage for the existing building that was leased to NORV. Therefore, Belmont asserts the construction of the policy and endorsement show that the coverage

was intended for the existing building in the same amounts as in previous years.

Alternatively, Belmont argues that reformation of the policy is necessary because the policy issued does not express the true agreement of the parties.

Belmont next attacks Axis' argument that its claim flows from a non-covered loss. First, they assert that the sublease was not cancelled due to flooding but was cancelled because Belmont had not commenced repairs nor provided any notice of its intent to repair the damages to the leased premises and because Belmont charged NORV for casualty insurance from January 2005 forward, but did not maintain that insurance.

Next, they assert that only 10% of the leased spaced flooded; therefore, Axis would be responsible for the remaining damage to the leased premises even if the exclusion is applicable to the 10%. In addition, they submit that the claim for loss rental income reached the limits before NORV terminated its sublease in August 2007. Finally, they allege that the rental payment obligation was not touched by flood waters and had nothing to do with that exclusion.

Belmont lastly argues that Axis misrepresents Belmont's settlement with NORV.

Brower argues that the policy, although entitled a "builders risk" policy, was, under the a plain reading of the language, a

commercial policy that was far more inclusive that the standard "builders risk." Brower argues that Endorsement B does not have the language which Axis wants the Court to apply, namely the word "renovation." Rather, the endorsement applies to covered causes of loss. While Endorsement B makes reference to a project, the policy was written (according to Brower) to cover the entire premises; therefore, the renovations to the relevant portion of the premises triggers coverage for business interruption to the entire premises. Brower argues that if the policy intended to exclude coverage for specific portions of the premises, it would have to explicitly set forth those terms in the policy language and Axis did not do this.

Brower also argues that its pending Motion for Summary Judgment establishes that the Axis policy covered much more than the traditional "builders risk" and that not everything in the policy required renovation as a prerequisite to coverage. Even if the policy is not read as Brower intends, it argues there is an issue for trial as to what was the intended coverage. Brower finally argues the policy covered the entire premises and that the hurricane was a covered loss. Because Belmont's business interruption claim arose from the Hurricane, Brower argues that it follows that Endorsement B is applicable to the Fairmont portion of the premises and the rental income loss damages sustained.

## II.  LAW AND ANALYSIS

Summary judgment should be granted only "if the pleadings,

10

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco*, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

Assuming without deciding, that Axis' arguments regarding no coverage under the policy are correct, summary judgment is still precluded because an issue of fact remains on the issue of whether the policy should be reformed.

As other written agreements, insurance policies may be

11

reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. *See e.g., Staten V. Security Industrial Ins. Co.*, 414 So. 2d 1328 (La. App. 2nd Cir. 1982). In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy. A unilateral misunderstanding is not sufficient.

Reformation has been found to be an appropriate remedy in the following non-exclusive situations: when the policy declarations do not reflect the coverages intended by the parties, when a showing is made that the insurer made a clerical or other error in the issuance of the policy or the failure to issue an endorsement for newly acquired property, when the amount of coverage agreed upon by the parties is incorrectly stated. *15 Louisiana Civil Law Treatise*, *Insurance Law and Practice*, W. Shelby McKenzie and H. Alton Johnston, III § 5 (3d Ed.) (citations omitted). However, insureds generally have been unsuccessful in seeking reformation of the standard printed provisions of a policy, usually because the insured's misunderstanding of the coverage is a unilateral error. *Id.* Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous. *Id*.

Belmont argues that it was the intention of it as well as that of Axis, CRC and Brower, to procure the Builders' Risk Coverage required by Axis in addition to the coverage it already had in place under the 2004-2005 policy. Thus, they argue that the policy

as written, assuming it is interpreted as Axis argues, was incorrect due to error in failing to address the mutual intent of both Belmont and the insurer.  Belmont has presented substantial evidence in support of this error and the intent of the parties sufficient to raise an issue of fact.  Axis, by virtue of its Motion for Summary Judgment on coverage, heavily contests that it was an error for coverage to be bound and issued for anything other than solely Builders' Risk with no coverage for the non-renovated portion of building.  Clearly, there is a disputed fact on the issue whether reformation should be allowed based upon mutual error.  The parties heavily dispute whether they intended the policy to cover all that was encompassed in the 2004-2005 policy plus the Builders' Risk as alleged by Belmont or if the policy was meant to provide only the Builders' Risk, as argued by Axis. As such, summary judgment is precluded.

Accordingly,

**IT IS ORDERED** that Axis Motion for Summary Judgment (Rec. Doc. 102) is **denied.**

New Orleans, Louisiana this 28th day of July, 2008.

**UNITED STATES DISTRICT JUDGE
IVAN L.R. LEMELLE**