**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BELMONT COMMONS, L.L.C.**                        CIVIL ACTION

**VERSUS**                                         **NO. 06-6879**

**AXIS SURPLUS INSURANCE COMPANY, ET AL.**         SECTION B(5)

<u>ORDER AND REASONS</u>

Defendant, Brower Insurance Agency, LLC ("Brower") filed the instant Motion for Summary Judgment requesting dismissal of the claim raised against it by Plaintiff, Belmont Commons, LLC relating to the excess flood coverage issue. Rec. Doc. 113. The Motion is Opposed. Rec. Docs. 168, 169. For the following reasons, the Motion is **denied.**

## I. BACKGROUND

This action arises out of the Hurricane Katrina insurance claim of Plaintiff, Belmont Commons, LLC for property located at 925 Common Street, New Orleans, Louisiana. The action was originally filed in the Civil District Court, Parish of Orleans, and removed to this Court. The current Motion before the Court is brought by Belmont's insurance agent Brower Insurance Agency, LLC ("Brower") claiming that all causes of action arising out of the flood excess coverage issue should be dismissed.

In 1998, Plaintiff, Belmont Commons, LLC ("Belmont"), purchased the long term lease of the property located at 925 Common Street. The Property consisted of a building of approximately

1

294,300 square feet. Belmont leased approximately 104,583 square feet of the building to the New Orleans Roosevelt Venture ("NORV"). NORV utilized this space as part of its operation of the Fairmont Hotel.

Brower was the insurance agent responsible for procuring coverage on this property from the late 1990's through the period giving rise to the insurance issues in this case. Belmont contends that Brower was also the agent for other properties belonging to the Plaintiff throughout the country and had been so for many years. The parties agree that Russ Miller ("Miller") of Brower was involved with the placement of property, liability, and flood insurance on Belmont's numerous properties including the one at issue.

In late 2004, Belmont Commons was negotiating with Pullman Bank ("the Bank") for financing to renovate 925 Common. The renovation was not going to include the space leased to the Fairmont/NORV. According to Belmont, the bank required a change in coverage as a condition to financing the project. As discussed later in this memo, the parties dispute whether that the bank ever intended to communicate a change in flood coverage and whether the change was communicated to Miller.

It is undisputed that prior to the hurricane and through the October 1, 2004 to October 1, 2005 policy year, $500,000 was the flood coverage in place. It is alleged that the property sustained

2

approximately $1.5 million in flood damage. Thus, Belmont was underinsured for approximately $1 million. This Motion deals with whether Brower should be held liable for this gap in coverage.

Brower argues the claim is precluded by LSA-R.S. § 9:5606 because it was filed over one year after the alleged negligent act or ommission of Brower. Brower asserts that any discussions about an increase in the flood coverage(assuming it took place) would have occurred prior to the closing on the new loan.  The closing took place on December 2004 and suit was not filed until August 26, 2006.  Thus, Brower argues that because its alleged act or omission took place more than 18 months prior to suit being filed, the action is time barred by the one year limitations period in LSA-R.S. § 9:5606.

Moreover, Brower argues that the original petition did not mention any issue Belmont had with Brower's procurement of flood coverage.  According to Brower, those allegatios were not made until Belmont filed its May 25,2007, amended petition.  Therefore, Brower argues the Court should use that date for purposes of determining if the action is precluded on the excess flood issue. Because Belmont's claim on the flood excess issue was filed over two years from the alleged act or omission and more than 18 months after Hurricane Katrina made landfall, they argue that the claim is

3

time-barred.[1]

Next, Brower argues that it does not have a duty to inform its insurance customers of the availability and option of excess flood insurance under either federal or Louisiana law. Brower submits that it does not offer or sell flood insurance other than under the SFIP and carries no excess product. Brower asserts that the amended complaint does not allege that Belmont ever asked Brower about excess flood coverage and does not allege that Belmont ever requested excess or surplus flood insurance. In the absence of such a request, Brower argues there is no provision in the law placing a duty on it to offer, make available and/or to inform customers about excess flood coverage when they purchase a policy especially considering it has no excess flood coverage product to offer.

Brower next argues that Louisiana law does not impose a duty upon Brower to provide excess flood insurance and/or inform its customers of the option and availability of excess flood insurance. Brower acknowledges that Louisiana law, in limited circumstances, imposes a fiduciary duty on agents in dealings with their customers; however, they argue that the complaint does not provide allegations sufficient to support that claim.

Next, Brower submits it cannot be held liable for negligent

---

[1] While Brower includes a section in its memo on this issue regarding when a party is deemed to have knowledge of their claim for purposes of LSA-R.S. § 9:5606. However, they only cite the law and provide no facts showing when or why Belmont had or should have had the requisite knowledge needed to preclude its action.

misrepresentation because there are no allegations that any representation made by Brower or Miller were false and, therefore, Belmont cannot prove that they justifiably relied upon any alleged misrepresentation to prove their claim. Brower also argues that since an insured is responsible for reading his policy and is presumed to know the terms, Belmont has no claim against Brower for not telling it what was readily apparent from the face of the policies, i.e. the coverage limits selected by Belmont. Brower submits that at no time in five years did Belmont ask, nor did Brower or Miller offer, to provide flood coverage outside the SFIP, the exclusive flood policy Brower had available.

 Belmont points out that Judge Porteous already found that the action was not preempted on the issue of Brower's liability in procuring the non-flood policy.  Belmont provides that this claim is very similar to that claim and, therefore, this preemption argument should be dismissed.

 Belmont submits that the issue is whether Brower was negligent or breached its fiduciary duty to procure excess flood insurance. Belmont asserts that it submitted evidence showing that it requested excess flood coverage and was told by Miller with Brower that it could not be procured.

 Belmont submits that the amended complaint was submitted within three years of the issuance of the policy; therefore, the action is not preempted.  Second, Belmont argues that Brower has

not produced any evidence providing when Belmont had or should have had knowledge that excess flood coverage was available and, therefore, the Court is left without evidence to determine whether the claims are prescribed by the one year period. Finally, Belmont submits the Court should read the amended claim as relating back to the filing of the original petition under FRCP 15.

Next, Belmont argues that Brower's argument that it had a duty under federal law to market excess flood insurance or advise spontaneously of its existence is misplaced because Belmont has only alleged claims under Louisiana law.  Belmont argues that Louisiana law obligates an agent to use reasonable diligence in attempting to place insurance requested and that this duty expands in light of the nature of the relationship between the parties. Further, an agent undertakes to provide insurance for a client's specific concerns when the agent knows of the risk against which the insured wants protection and has experience with those types of coverage in the market.  Belmont argues that regardless of whatever obligations might exist under federal law, there is state law obligation for Brower to respond  prudently to the insured's question and requests.  Representatives of Belmont asked Brower about procuring additional flood insurance on the property and were told that it did not exist. That representation, it turns out, is not accurate.

Finally, Belmont argues that there is a duty under Louisiana

law to provide competent advice to insureds upon request. Belmont asserts that it has never argued and does not argue now that Brower "spontaneously" had to propose excess flood coverage; instead, the claim is when asked by Belmont representatives about excess flood coverage, Brower made a mistake when it said it was not available.

Axis argues that this Court's prior ruling on preemption applies because the same arguments are made by Brower and the facts have not changed.

Next, Axis argues that the claims are not preempted because Belmont did not discover until after Hurricane Katrina that the excess or surplus coverage could be purchased for flood risks over $500,000. Since Belmont filed suit within one year of Hurricane Katrina making landfall, i.e. August 26, 2006, Belmont's claim is not precluded.

On the issue of whether the flood claim is precluded because it was brought in the May 2007 amended complaint, Axis argues that the amended petition relates back to the original petition under FRCP 15 and, therefore, is timely filed. Axis also argues that even if the Court uses the May 2007 filing as the date to determine whether the action is precluded, summary judgment should be denied because there is a fact issue on when Belmont discovered that excess flood coverage was available.

Additionally, Axis argues that under Louisiana law, an insurance agent has a fiduciary duty to the insured and he is

liable for his intentional or negligent breach of that duty. Axis points out that the testimony of Belmont's representative establishes that Brower failed to advise its client that the additional coverage was available and that Belmont informed Brower that it wished to purchase additional coverage. Because Brower is liable based upon the facts presented, Axis argues summary judgment should be denied.

## I. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649

(5th Cir. 1992). Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.*

A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255.

### B. LSA-R.S. 9:5606.

LSA-R.S. 9: 5606 (A) provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and property venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act,

omission or neglect.

Both the one year and three year periods described in Section A are preemptive.  LSA-R.S. § 9:5606(D).

There are two periods provided for in this statute.  The first provides that the action against the agent will barred if not brought within one year of the date of the alleged act, omission or neglect **or** within one year from the date the alleged act, omission or neglect is discovered.  The second period provides that in those cases filed within one year of discovery, such action must be filed within three years from the alleged act, omission or neglect, or the action is barred.

The parties submit no argument to the Court on the three year period and after reviewing the arguments of counsel and the record, the Court finds that three year period is inapplicable to this case.

The dispute involves the one year period.  Brower asserts that since the negligent act it is alleged to have committed, i.e. failing to advise on the excess flood coverage, took place prior to the December 8, 2004 closing date on the renovation loan, the action is barred because the suit was not filed until August 26, 2006, or approximately 18 months after its alleged negligent act.

Brower's argument fails to read the second part of the first limitation period of the statute, namely that if the suit is filed within one year of **discovery** of the alleged act, omission or

10

neglect, the suit is timely.

In support of the parties respective positions, they submit over thirty exhibits mostly containing communications between representatives of the bank, Belmont, Brower and CRC surrounding the insurance issue related to the new loan. Those documents are briefly summarized here.

In a November 17, 2004 e-mail, Carole Towne, the bank's lawyer, e-mailed, among others, Marc Blumberg with Belmont, and Belmont's lawyer, Dan Pancamo, with some "Comments on Insurance." *See* Exhibit "3" attached to Rec. Doc. 36. In this e-mail, the bank requested an explanation of "how it was determined that $500,000 is an adequate amount of flood coverage." *Id*. Marc Blumberg sent the Towne's e-mail to Miller on November 17, 2004, and instructed Miller to be "on top of it as we may need to make adjustments" to coverage. That same date, Miller reported to Belmont's lawyer and Marc Blumberg that "[t]his building is located in a flood zone. Flood insurance has been purchased through the Federal Flood Insurance program. $500,000 is the maximum limit you can [purchase]." *See* Exhibit "4" attached to Rec. Doc. 4.

Belmont's counsel forwarded Miller's e-mail to Towne and stated, in pertinent part, "I am forwarding to you response from Belmont's insurance broker. Please review with Len and let us know what you think." *See* Exhibit "8" attached to Rec. Doc. 113. Towne responded "[a]s for flood, I will ask the Bank whether they think

that $500,000 is adequate or if they would like you to purchase more." *See* Exhibit "9" attached to Rec. Doc. 113. Mr. Blumberg, who was copied on the e-mail from Towne responded to Miller, "this is incredible...not going to get into most of this here but my understanding is that there is a $500,000 limit on Federal flood insurance." *See* Exhibit "10" attached to Rec. Doc. 113. Miller then asked Toni Volpi with CRC (the wholesale broker) whether flood excess coverage was available in anticipation that the issue would could up. Brower contends Miller never received a quote or additional cost information for Volpi. *See* Exhibit "1" attached to Rec. Doc. 113.

Marc Blumberg was deposed in this matter and testified that he specifically asked Mr. Miller about the ability to obtain excess flood insurance. *See* Exhibit A attached to Rec. Doc. 169. Emanuel Organek, the other corporate designee of Belmont, was deposed and stated that having sufficient insurance was important, particularly obtaining excess flood. *See* Exhibit B attached to Rec. Doc. 169. Belmont also submits the affidavit of Organek who attested that he did not learn that "surplus or excess coverage could be purchased for flood risks in excess of $500,000 for the 925 Common Street structure" until after Hurricane Katrina. *See* Exhibit "1" attached to Rec. Doc. 36.

Brower argues that the evidence shows that the closing took place on December 8, 2004 and suit was not filed until August

12

26,2006 with the amended petition being filed on May 25, 2007. Thus, any act or omission by Brower occurred well in advance of the one year time period. However, Brower presents no evidence to rebut Belmont's contention that Belmont did not know that excess coverage was available or could have known that excess coverage was available until after Hurricane Katrina when it discovered the alleged Brower error. Since the action was filed on August 26, 2006, within a year from the date Hurricane Katrina made landfall on August 29,2005, the claim is timely.

The Court also rejects Brower's argument that because the flood excess allegations were raised for the first time in the amended complaint filed in May 2007, that those claims are barred.

FRCP 15C(1)(B)provides that an amendment to a pleading relates back to the date of the original pleading when the "the amendment asserts a claim or defense that arouse out of the conduct, transaction or occurrence set out –or attempted to be set out – in the original pleading." If a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in the prior complaint, then relation back is allowed. *F.D.I.C. v. Conner,* 20 F.3d 1376, 1386 (5th Cir. 1994). "[T]he best touchstone for determining when an amended pleading relates back to the original pleading is the language of Rule 15(c): whether the claim asserted in the amended pleading arises 'out of the conduct, transaction, or occurrence set forth or

13

attempted to be set forth in the original pleading.'" *F.D.I.C.*, 20 F.3d at 1386.

In *FDIC*, plaintiff sought to amend its complaint to incorporate charges that the defendant's wrongful conduct caused harm to loans that were not identified in the original complaint. The defendant argued that amendment would be futile because the claims on the new loans would not relate back to the date of the original complaint and would thus be barred by the applicable statute of limitations. The defendants also contended that they would be prejudiced by the amendment. The Court disagreed finding that damage allegedly caused by the loans that the FDIC sought to include **arose out of the same conduct** as the damage caused by the twenty-one loans listed in the original complaint. *FDIC*, 20 F. 3d at 1386 (emphasis added). Because the FDIC's amendment sought to identify additional sources of damages that were caused by the same pattern of conduct identified in the original complaint, did not seek to alter the basic focus of the claim and since the defendants did not show sufficient prejudice, amendment should have been allowed. *FDIC,* 29 F. 3d at 1386.

Belmont amended its complaint in accordance with the scheduling order. At that time, there was no objection raised by Brower despite that Brower was a named defendant when leave was sought to amend. The amendment added a claim for additional damages for failure to procure enough flood insurance arising out of the

14

same transaction or occurrence as the allegations in the original complaint. The original complaint alleges that Brower breached its duties and obligations to Belmont which caused damages.  The amended complaint adds the flood excess claim as a additional basis for the breach of agent duty claim and is similarly based upon the conversations and e-mails surrounding placement of insurance up to the December 8, 2004 closing.  The same general facts and circumstances that deal with procuring insurance that was in effect at the time of Hurricane Katrina which are at issue with the Axis surplus policy are also at issue with the flood policy. Finally, in the absence of any objection before now, Brower cannot claim prejudice.  Accordingly, the Court finds the amendment relates back.

Alternatively, the evidence shows that Belmont did not discover they could maintain excess flood coverage until after Hurricane Katrina. The actual date of that discovery has not been provided to the Court. Thus, even if the Court were to decide that the amendment does not relate back, summary judgment would still be denied as the Court cannot ascertain the actual discovery date. Accordingly, an issue of fact precludes summary judgment on this issue.

**II.     Duty Issue.**

Under Louisiana law, an insurance agent has a fiduciary duty to the insured and he is liable for his intentional or negligent

15

breach of this duty. *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir.1990). In order to prevail on this cause of action, the Plaintiff must show that (1) an undertaking or agreement by the agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that he is properly insured. *Id.* (*citing Karam v. St. Paul Fire & Marine Ins. Co.,* 281 So.2d 728, 730-31 (La.1973)). An insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client. *Id.*

In Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, *4 (E.D. La. 2006), Judge Lemmon denied an agent's motion to dismiss because the allegations provided that prior to each renewal, the plaintiff discussed the value of the property with a representative of agent and requested full coverage for the property. The plaintiff further alleged that each year he purchased the building limit of insurance based on those conversations and agent's expertise. The court found that the allegations stated a claim that the agent assumed a duty greater than merely procuring insurance and that he was negligent in performing the requested

16

services.  *Southern Athletic Club, LLC*, 2006 WL 2583406, 3.

In this matter, the allegation is that Belmont requested that the agent procure additional flood coverage.  As laid out in the previous section, Belmont has submitted documents, depositions and affidavits in support of its allegation that it requested the excess flood coverage and was told they had the maximum available.

Brower provides that a request about excess flood coverage in addition to the SFIP was never made and in support Brower, attaches the deposition of Miller. Miller testified that the only dealings he had with flood coverage was to go directly to a flood carrier. *See* Exhibit "1"attached to Rec. Doc. 113. Miller also testified that Belmont had flood coverage on the 925 Common property equaling $500,000 for four or five years prior to the hurricane and that it was his understanding that this was the maximum coverage available under the National Flood Insurance Program ("NFIP"). *See Id.* Miller also testified that he was not asked to procure excess flood coverage over an NFIP policy and was not asked by Belmont to get excess flood coverage.  *See Id.*  Miller also testified that he was not aware of any market in which he could get excess flood coverage in New Orleans.  *See Id.*

Brower also argues that the testimony of Organek provides only that he wanted "all insurance possible" but that neither he nor Blumberg ever requested an increase in the flood coverage or asked Miller to find more coverage.

17

Brower also argues that the bank's e-mails did not show that the bank wanted to procure more insurance for flood. It also submits that the bank attorney's November 19, 2008 e-mail provides that she would "ask the Bank whether they think $500,000 is adequate or if they would like [Belmont] to purchase more." Brower asserts that the question went unanswered and the matter proceeded to the closing; thus, Brower assumes the bank was satisfied with coverage and dropped the issue.

The intent of the communications between Belmont, Brower, the Bank and CRC surrounding the insurance needed during the expansion loan project are heavily disputed and each party argues that its position is the correct. Brower argues that these communications are not a request, while Belmont argues the communications unequivocally are a request for additional insurance. There are, at a minimum, fact issues relating to whether Brower undertook or agreed to procure additional flood insurance and in that role, failed to use reasonable diligence in attempting to place the insurance. Thus, Summary Judgment is denied.

Accordingly,

**IT IS ORDERED** that Brower's Motion for Summary Judgment (Rec. Doc. 113) is **denied.**

New Orleans, Louisiana this 28th day of July, 2008.

**UNITED STATES DISTRICT JUDGE
IVAN L.R. LEMELLE**