```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**BELMONT COMMONS, L.L.C.**                                     **CIVIL ACTION**

**VERSUS**                                                       **NO. 06-6879**

**AXIS SURPLUS INSURANCE COMPANY, ET AL.**                       **SECTION B(5)**

## ORDER AND REASONS

Before the Court is Axis Surplus Insurance Company's Motion for Summary Judgment requesting a finding that windows on the 925 Common Property are not covered by its policy. Rec. Doc. 119. The Motion is opposed. Rec. Docs. 160,166. For the following reasons, the Motion is **DENIED**.

**I.   BACKGROUND**

The facts of this case have been laid out in the prior orders on the ten Motion submitted for this Court's review. In this Motion, Axis Surplus Insurance Company requests a summary judgment on coverage related to the windows at 925 Common.

Axis' argument is three-fold. First, it argues that the damage to the windows pre-dates Hurricane Katrina. Second, it argues that all of the damages on the windows on the ground floor are not covered because they were due to flood and, therefore, excluded by the flood exclusion in the Axis' policy. Finally, Axis argues that the policy does not provide coverage for the property scheduled to be replaced and removed from the building and not a permanent part of the building nor intended to be a permanent part

of the building.  Because there was a subcontract to replace the windows in place prior to the storm, Axis argues cannot argue that there is coverage for the windows.

Belmont counters that summary judgment on this issue is precluded because: it has produced evidence that windows were in fact damaged by the storm; it is not making a claim for windows that were damaged or scheduled to be replaced before the storm; and there are fact disputes about the amount of broken windows, the amount of damages for actual repairs to the windows and fact disputes regarding the estimates for repairs for the windows at the Fairmont Hotel.

Brower Insurance Agency, Inc., argues that the policy does not contain language excluding coverage for the windows and that a clear reading of the policy indicates that there is coverage for the entire premises.  Further, Brower argues that Axis did not attach evidence sufficient to support its argument that the policy has no coverage for the windows.  Thus, Brower requests that summary judgment be denied on the coverage issue.

Brower agrees that summary judgment should be granted finding that Belmont can not prove that it is entitled to any money under the policy for the windows.  In support, Brower relies upon the project manager's testimony providing that at his inspection prior to the storm there were approximately "fourteen plus or minus" windows broken in the building.  Thus, Brower argues that Belmont

cannot prove that the window damage was caused by the hurricane and it should not be able to double recovery or a "windfall" damage award for the windows.

**II. LAW AND ANALYSIS**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco*, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.*

A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.  In evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  *Anderson,* 477 U.S. at 255.

    **A.**   **Window Damage Pre-dating Hurricane Katrina**.

Carl Woodard was awarded the renovation contract and contracted DeGeorge Glass to perform glass repair and installation as part of the project.  The Woodard project manager, Chris Michel, and a DeGeorge representative performed a site inspection on August 23, 2005, prior to Hurricane Katrina.  The records from this inspection indicate that there were "fourteen plus or minus" broken windows in the building at that time.  Michel testified that there was no work performed on the windows between the August 23, 2005, inspection and the August 29, 2005, landfall of Hurricane Katrina.  The deposition of Michel also states that he did not recall where these windows were located in the building.

The Woodard subcontract agreement with DeGeorge Glass Company, Inc., provides that DeGeorge was hired to, "remove and store at shop, 11 floors exterior windows," "remove existing louvers at elevator lobby. Furnish and install new aluminum frames with simulated sand-blasted glass," "furnish and install new ½" clear tempered glass at all glass doors at ground floor," "furnish and

4

install brake metal at 30 locations to cover existing steel post," "mechanically fasten shut all operable windows as directed, replace broker glass at uppers (sic) floors," "replace broken glass at ground floor-university side," and "furnish and install 5 lites of 1/4" clear tempered glass in Raco frames. Complete installation fo Raco frames." *See* Exhibit "2" attached to Rec. Doc. 119.

Belmont attaches the declaration of its expert Earl T. Carr, attesting that after the storm there were forty-five broken windows on the non-Fairmont leased portion of the 925 Common property. Mr. Carr estimates that the repair of these windows would cost approximately $23, 782.80 and in support, Belmont attaches the estimate of Zinsel Glass and its subcontract agreement with Belmont for the installation of forty-five units of glass at the 925 Common property.

There exists an issue of fact concerning which windows of the 925 Common building were or were not broken or damaged prior to the storm precluding summary judgment.  Any window damaged before the storm would not be covered; however, Axis provides evidence demonstrating only that fourteen or so windows were broken. Belmont has attached evidence showing that there were forty-five windows needing repair.  While the Court agrees that pre-storm damage would not be covered; Axis has failed to show that all of the forty-five or so windows for which Belmont seeks coverage were damaged pre-storm and, therefore, not covered.  To the extent that

Axis argues that Mr. Carr's conclusions are unreliable and should not be considered, the Court has already denied the Motion in Limine on this issue and finds the argument unpersuasive.

Further, the parties agree that the pre-storm renovation project did not encompass the potion of 925 Common that was leased to the Fairmont hotel.  There is a coverage issue outstanding on whether the leased portion of the building was covered. Nevertheless, Axis has presented no evidence of broken windows at the Fairmont before the storm.  However, Mr. Carr attests that he inspected the Fairmont property post-storm and confirmed they needed replacement.  In addition, Belmont attaches the handwritten notes of the Fairmont's adjuster demonstrating that a number of window were damaged or broken on that portion of the building space leased to the Fairmont.  The cost to repair these windows has been estimated at $70, 771.80.

Summary judgment cannot be granted on the pre-storm window damage issue as it relates to the non-Fairmont windows because there exists an issue of fact as to which "fourteen or so windows" of the property were damaged pre-storm.  In addition, no evidence has been presented demonstrating any pre-storm window damage to Fairmont leased portion of the building.

**B.   Coverage**.

Axis first argues that its policy precludes coverage for any damage to ground floor windows because of a flood exclusion in its

policy.  The exclusion relied upon Axis provides:

> B. EXCLUSIONS
>
> 1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss' is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
>
> e. Water
>
>> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

Belmont does not dispute that to the extent that any of the windows were damaged by flood waters that the Axis policy precludes coverage.  The problem with Axis' Motion is that it does not provide evidence of which windows on the first/ground floor were damaged by flood nor does it provide any evidence to support its argument that all of the windows on the first/ground floor were destroyed by flood.  Instead, Axis makes the conclusory allegation that "Belmont's allegations that it is owed damages for repairs to windows and glass on the first floor of the property must be dismissed [because]...the Axis policy excludes damage due to flood."  There has been no expert report or other evidence presented demonstrating that all ground/first floor windows were damaged by flood or which ground/first floor windows were damaged by flood.  Accordingly, the Court does not have sufficient evidence to grant summary judgment based upon the flood exclusion in the policy.

Next, Axis argues that the Rehab Endorsement in its policy requires summary judgment. The pertinent provisions provide:

> **A. COVERAGE**
>
> We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

Covered Property was amended in the ReHab Endorsement as follows:

> 2. Paragraph A.1 Covered Property, is replaced by the following:
>
>    **A.1. COVERED PROPERTY**
>
>    Covered Property means your property or the property of others for which you are liable consisting of:
>
>    > a. materials, supplies, machinery, equipment or fixtures which will become a permanent part of the building structure or project at the project site shown in this coverage Form Declarations;

...

> 4. The following is added to Paragraph A.2 Property Not Covered:
>
>    **A.2.f**. Property to be removed from existing buildings or structures and not intended to become a permanent part of completed buildings or structures.

Axis argues that the subcontract between Woodard and DeGeorge, as well as the testimony of Michel show that there was "substantial window replacement" planned as part of the renovation project. Because those windows were not intended to become a permanent part of the building, Axis argues coverage is precluded.

Belmont asserts that it is not seeking coverage for windows which were scheduled to be replaced pre-storm.

The Court agrees that the policy language is clear that if the windows were to be removed and not intended to become a permanent part of the completed building, then they are not covered. However, the problem, again, is that Axis fails to meet its burden. The description of the work to be performed indicates that the exterior windows on eleven floors will be removed, stored and then re-installed with new tempered glass. It is undisputed that the building insured was a fourteen story building. Thus, it is unclear which windows on the fourteen stories would be removed, the glass replaced and re-installed and which were to remain. In addition, Axis' Motion states that "substantial window replacement" was planned, not total replacement. Axis simply does not provide any evidence on the total replacement of all windows at issue.

Additionally, the Fairmont portion of the lease was not the subject of the renovation, so those windows cannot be said to have been slated for removal and not intended to become a permanent part of completed building, assuming there was coverage, which has not been determined.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. 119) is **denied.**

New Orleans, Louisiana this 28th day of July, 2008.

                                    UNITED STATES DISTRICT JUDGE
                                    IVAN L.R. LEMELLE