UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BELMONT COMMONS, L.L.C.**                                **CIVIL ACTION**

**VERSUS**                                                  **NO. 06-6879**

**AXIS SURPLUS INSURANCE COMPANY, ET AL.**                  **SECTION B(5)**

ORDER AND REASONS

Before the Court is Defendant Brower Insurance Agency, LLC's Motion for Partial Summary Judgment on Excluded Items Under Flood Coverage. (Rec. Doc. No. 247). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment is **DENIED.**

BACKGROUND

This action arises out of the Hurricane Katrina insurance claim of Plaintiff Belmont Commons, LLC ("Belmont") for property located at 925 Common Street, New Orleans, Louisiana. The action was originally filed in the Civil District Court, Parish of Orleans, and removed to this Court. The current motion before the Court is brought by Belmont's insurance agent Brower Insurance Agency, LLC ("Brower") who argues that the claims of Plaintiff relating to asbestos and four pumps should be dismissed. Defendant Brower also argues that any estimates of value for items alleged to be covered should be calculated at actual cash value due to non-replacement of these items by Plaintiff.

In 1998 Plaintiff Belmont purchased the long term lease of the property located at 925 Common Street. The Property consisted of a building of approximately 294,300 square feet. Belmont leased approximately 104,583 square feet of the building to the New Orleans Roosevelt Venture ("NORV"). NORV utilized this space as part of its operation of the Fairmont Hotel.

Brower was the insurance agent responsible for procuring coverage on this property from the late 1990's throughout the period giving rise to the insurance issues in this case. Belmont contends that Brower was also the agent for other properties belonging to Plaintiff throughout the country and had been so for many years. The parties agree that Russ Miller ("Miller") of Brower was involved with the placement of property, liability, and flood insurance on Belmont's numerous properties, including the one at issue.

In late 2004, Belmont Commons was negotiating with Pullman Bank ("the bank") for financing to renovate 923 Common. The renovation was not going to include the space leased to the Fairmont/NORV. According to Belmont, the bank required a change in coverage as a condition to financing the project. The parties dispute whether the bank ever intended to communicate a change in flood coverage and whether the change was communicated to Miller. At the very least, Brower and the bank expressed concern regarding flood coverage of only $500,000.00 to Miller, and Miller did at

2

some point inquire about excess flood insurance but never obtained a quote.

It is undisputed that prior to the hurricane and throughout the October 1, 2004 to October 1, 2005 policy year, $500,000 was the flood coverage in place.  The property sustained substantial flood damage.  This motion alleges that asbestos and four (4) pumps in the basement would not be covered under any flood policy and argues that any estimates of value for items covered should be calculated at actual cash value ("ACV") due to non-replacement of the items by Plaintiff.

Plaintiff has incorporated the claims adjustment conducted by Brad Unruh for Fidelity Nation Insurance Company as part of its claim.  Public adjuster, Earl Carr, who was hired by Plaintiff testified that Brad Unruh did not include several items.  Mr. Carr and Rick Dupont, an estimator for Carl E. Woodward, Inc. reviewed the 1952 plans of the building located at 925 Common and compiled a list of items they believed were in the building on August 23, 2005 and assigned values to these items.  All of the values assigned are at Replacement Cost Value and do not take into account depreciation.  As of June 12, 2008, the items listed in the Dupont list (Exhibit B) and the list provided to Mr. Unruh (Exhibit B) had been demolished and removed from the building.  (See Exhibit A at 269-70).  No pictures were taken of these items before the demolition.  (See Exhibit A at 292-95).

Brower argues that claims relating to asbestos and four pumps should be dismissed and that estimates of value for items alleged to be covered should be calculated at actual cash value due to non-replacement of the items by Plaintiff. Both of these arguments rest on Brower's assertion that Plaintiff has no evidence or experts regarding what if any excess flood insurance policy could have been purchased and would have been in effect at the time of the hurricane and therefore Plaintiffs are limited to the coverage specified in the National Flood Insurance Program ("NFIP") policy. (Exhibit D). Brower supports this argument in its reply to Plaintiff's opposition with the assertion that under Louisiana law claims based on an insurance agent's failure to use due diligence to procure insurance is limited to the coverage requested. However, Brower alleges that Belmont "wishes to simply state that it requested excess flood" insurance rather than requesting a specific amount of excess flood insurance coverage and thus essentially assert it has no limit to possible claims under the generally requested flood insurance. Brower further argues that because there is no proof that Belmont would have been covered under an excess flood insurance policy, then Plaintiff can only recover under the NFIP policy and the plain language of NFIP does not include asbestos or the referenced pumps.

Although Brower asserts that estimates of value for items alleged to be covered should be calculated at actual cash value due

to non-replacement of the items by Plaintiff, Brower provides no law, other than the General Conditions, Loss Settlement provisions of the Standard Flood Policy, Section VII, paragraph V, to support this proposition.

Belmont's primary argument is that Belmont's claims are based on coverage for the items referenced, asbestos and pumps, under the private non-NFIP excess insurance it requested from Brower. Belmont further argues that NFIP terms cannot "be grafted onto private, non-NFIP excess insurance or serve to limit claims for negligence and breach of fiduciary duty against an agent"(Rec. Doc. No. 262 at 2) and asserts that material issues of fact exist regarding 1) "whether the NFIP policy terms and conditions apply to Belmont Commons' claims against Brower," and (2) "whether the NFIP terms and conditions, if they apply, would exclude the items in Mr. Dupont's estimate." (Rec. Doc. No. 262 at 3). Belmont also argues that Brower has failed to present evidence regarding the actual cash value of the items claimed; therefore the Court would have to speculate as to whether the actual cash value and replacement value were different as a preliminary factual matter.

Belmont specifically argues that NFIP terms and conditions do not apply and supports this with the testimony of broker Volpi. Volpi testified that the terms and conditions could be freely negotiated for excess coverage. Belmont further argues that asbestos is covered under NFIP as "non-flammable insulation in a

basement" and that removal of the asbestos because of flood related damages is also expressly covered under NFIP.

Belmont argues that Brower's argument regarding the exclusion of the four pumps is too general and further that the pumps Belmont has included would be covered under NFIP; Mr. Dupont's estimate includes sump pumps, pumps covered under the central A/C system provisions, and pumps for the hot and cold water circulation system, which Belmont claims are an integral part of the plumbing system. Belmont argues that design fees, bond costs, and general conditions are covered because "it makes no sense to cover the item and its replacement cost without paying for the labor to get the job done." (Rec. Doc. No. 262 at 6).

## DISCUSSION

### A.  Summary judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving

party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.  Threshold issue - Limitation of Damages Generally**

The crux of this entire case and the present motion for summary judgment rests upon whether Brower breached its duty to Belmont by failing to relay to Belmont proper information regarding excess flood insurance and failure to secure the same.  Thus the threshold question in the present motion is whether asbestos and the 4 pumps would be covered under the excess flood insurance Belmont allegedly requested of Brower.  This is a wholly disputed issue of material fact. Belmont has presented evidence that excess flood insurance policies exist and that it may have been possible for Belmont to secure excess flood insurance for 925 Commons Street prior to Hurricane Katrina.  Furthermore, Belmont has also presented evidence that the terms of such excess flood insurance are negotiable and therefore asbestos and the pumps could be within the range of items covered by the excess policy.  Evaluation of

these specific details and the weight of the corresponding evidence presented are appropriate for the trier of fact.

Limits

Brower argues that Plaintiff is limited to the terms of NFIP coverage because, even if Belmont did request excess flood insurance, it did not request specific amounts or terms and Louisiana law limits recovery on claims that an insurance agent failed to use due diligence to procure insurance to losses within the scope of the coverage requested. Brower cites *Hutchins v. Hill Petroleum Co.*, 609 So. 2d 306 (La. App. 3 Cir. 1992), in support of this proposition, specifically the statement: "Louisiana courts recognize that a party who claims that an insurance agent failed to use due diligence to procure insurance (in this case, to add [third party] as an additional insured) cannot recover for losses that are not within the scope of the coverage that the party actually requested."

Hutchins and the cases it cites in support of this legal proposition limiting damages are not sufficiently analogous to the present case to sufficiently guide application in the context that Brower asserts. Hutchins was an employee of Artigue Construction Company, Inc. ("Artigue") who was injured while Artigue was under a labor contract with Hill Petroleum Company, Inc. ("Hill"). The contract between Hill and Artigue required that Artigue add Hill as an additional insured to its liability policy. Artigue relayed

8

this request to its insurance agency. The agency failed to add Hill and failed to inform Artigue. Once Hill learned it was not listed as an additional insured on the policy, it terminated its labor agreement with Artigue. Artigue sued the insurance agency, and the trial court awarded Artigue damages for lost profits due to the termination of the contract between Artigue and Hill. *Id*. at 311. The Louisiana Court of Appeals, Fifth Circuit, found that lost profits were not recoverable in that case because lost profits for termination of contract would not have been covered in the insurance policy had Hill been named as an additional insured. *Id*. at 310. The court noted that "Artigue may only recover for losses it would incur within the scope of the contract had Hill been named" and that "losses resulting from a delay in or lack of performance of a contract ... by or on behalf of Artigue" was not included in the contract language. *Id*. The court did find, however, that Hill was immune from tort liability, a provision that "falls within the scope of the coverage had Hill been named." *Id*. Subsequently, the appellate court upheld the district court's award of attorney's fees Artigue incurred due to Hill's claims against Artigue for indemnification on the basis that "the insurer is obligated to provide its insured with a defense."

Hutchins, like the cases it cites, involved an insurance policy with specific, easily identifiable terms. The only term not included in Hutchins was the inclusion of the additional insured

rather than specifics as to liability amounts for specific actions. Similarly, the cases cited by Hutchins, Bell v. Precision Motors, Inc., et al, 299 So. 2d 886 (La. App. 4 Cir. 1974), Foster v. Nunmaker Discount Co., 201 So. 2d 215, 217 (La. App 4 Cir. 1967), and Foreman v. General Elec. Credit Corp., 344 So. 2d 1140 (La. App. 3 Cir. 1977), all involve policies with easily identifiable terms and coverage limits.[1] Additionally, unlike the present case in which Belmont is fully aware it did not purchase excess flood insurance, the Plaintiffs in all these cited cases believed they

---

[1] In *Bell v. Precision Motors, Inc., et al,* 299 So. 2d 886 (La. App. 4 Cir. 1974), the buyer of an automobile sued the company that financed the car because the finance company retained the buyer's insurance premium as part of the amount financed but failed to obtain the insurance and failed to notify the buyer. The Court found that "the measure of damages is the amount of plaintiff's property loss which would have been covered by insurance, had [the lender] procured coverage." This case dealt with a specific premium price for an insurance policy often obtained by the finance company on behalf of its borrowers. Hence the terms of coverage in Bell are very specific and thus easily identifiable. The property loss that would have been covered by excess flood insurance in the present case is not as easily determined. Brower never even confirmed to Belmont the availability of excess flood insurance. Therefore the parties never even progressed to a discussion regarding the type or amounts of specific coverage available under an excess flood insurance policy. In *Foster v. Nunmaker Discount Co.*, 201 So. 2d 215, 217 (La. App 4 Cir. 1967), the court found that the car owner, to whom trial court had awarded lost wages due to damage to the uninsured vehicle, could not collect more from agent, who failed to inform owner that coverage had been cancelled, than owner could recover under the insurance policy which did not include lost wages. The court in *Foreman v. General Elec. Credit Corp.*, 344 So. 2d 1140 (La. App. 3 Cir. 1977), limited damages to the amount prayed for, damage to the vessel and mooring expenses; however the court of appeals gave no indication on what basis trial court awarded the excess damage amount.

were covered and had paid a premium for the insurance they believed they had.

The applicable legal guidance that the Court can take away from Hutchins is simply that in the event Belmont proves that Brower breached its duty to Belmont by leading Belmont to believe that excess flood insurance was not available and by not procuring such, damages would be limited to the type of coverage included in such a policy. Hutchins cannot be stretched to apply to the present case that essentially addresses failure to purchase a general type of insurance rather than a very specific policy with specific terms of which both parties are well aware. As stated by Louisiana Court of Appeals, Fourth Circuit, "[t]he measure of damages is the amount of plaintiff's property loss which would have been covered by insurance" had coverage been procured. Bell, 299 So. 2d at 890. Presently, the type of excess flood insurance available for purchase by Belmont at the time request and type of property loss that would have been incurred constitute genuine issues of material fact. Additionally, Belmont has presented specific facts, in particular testimony of the wholesale broker, that terms of excess flood policies could be negotiated and could therefore possibly cover the disputed items. Similarly, actual cash value versus replacement cost is a condition that could also possibly be negotiated in an excess flood insurance policy.

**C. Coverage of Asbestos and the 4 pumps under SFP**

Brower asserts that asbestos in the basement and 4 "general" pumps are not covered under SFP. Paragraph A(8) of Section III "Property covered" of NFIP's General Property Form SFP lists several items in a basement that are covered and include the following items "if installed in their functioning locations and, if necessary for operation, connected to a power source:" central air conditioners; nonflammable insulation in a basement; water filters an faucets installed as an integral part of the plumbing system. Asbestos is a nonflammable insulation material, and as such appears to be covered under SFP.

Belmont argues and the Court agrees that Brower's description of excluded "general pumps" is overly broad. The SFP provision regarding items in basement specifically lists four types of covered pumps and systems, such as central air conditioners, as covered items. It is unclear from a plain reading of the text of the SFP provision whether pumps that are part of a central air conditioning system or part of the plumbing system would be included in the covered basement items. Belmont has presented specific evidence that the plumbing system pumps would be covered under SFP. Although Brower submitted a sur-reply, that reply was silent on the issue of the pumps in the basement.

**D. Actual Cash Value v. Replacement Cost Under SFP**

The Court has already determined that the threshold issue involves the terms and coverage that would be included in the

12

requested excess flood policy. Actual cash value versus replacement cost are terms that could also possibly be negotiated in an excess flood insurance policy. However, the Court will address actual cash value versus replacement cost in terms of SFP as the parties have done in their pleadings regarding the present motion for partial summary judgment.

The Standard Flood Policy provides:

Loss Settlement

We will pay the least of the following amounts after application of the deductible:

1. The applicable amount of insurance under this policy
2. The actual cash value; or
3. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

Standard Flood Policy at Section VII, paragraph V. (See Exhibit D at 16).

Belmont argues that "to grant Brower's summary judgment motion, the Court would have to conclude that those two figures [actual cash value and replacement cost] are different, without any evidence against such a result." The Court agrees. Brower has not presented any evidence regarding the actual cash value. Neither has Brower presented any law supporting the proposition that replacement cost can only be used if the items are actually replaced. The plain language of the SFP articulates simply that the least of the amounts shall be paid. While it is likely that

13

the actual cash value would be the least amount of the three, especially, as Brower asserts, the items were installed in 1952, the Court declines to assume amounts for the parties. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 29th day of October, 2008.

**UNITED STATES DISTRICT JUDGE**